UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JENNMAR OF KENTUCKY, INC., *et al*., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2:20-cv-1086-GMB |
| CURTIS R. WILSON, *et al*., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint In Part. Doc. 45. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge. Doc. 29. After careful consideration of the parties' filings (Docs. 45, 51 & 54) and the relevant law, the court concludes that the motion to dismiss is due to be granted in part and denied in part.

## I. THE AMENDED COMPLAINT

Plaintiffs Jennmar of Kentucky, Inc. ("Jennmar of Kentucky") and Compliance Staffing Agency LLC d/b/a Jennmar Services ("Compliance Staffing"), along with other affiliated entities, collectively described in the amended complaint

as "Jennmar,"[1] design, manufacture, and distribute underground support systems and associated equipment and provide staffing services to companies in the coal and hard rock mining, oil, gas, and industrial and manufacturing industries. Doc. 39 at 1–2. Defendant Ray Wilson ("Ray") "join[ed] Jennmar in April 2000 as a sales executive."[2] Doc. 39 at 3.   Initially Ray's "responsibilities focused on selling Jennmar's underground roof support systems and equipment" (Doc. 39 at 9), but his responsibilities grew to include "developing new opportunities for other lines of business within the Plaintiffs' family of companies, including its labor staffing company," Compliance Staffing. Doc. 39 at 9.

In October 2009, Ray was promoted to Regional Technical Sales Manager for the Midwest and Southeast and became employed by Jennmar of Kentucky. Doc. 39 at 3.  He held this position for the remainder of his employment. Doc. 39 at 3.  The amended complaint describes Ray as Jennmar's "'boots on the ground,' and their lead business development executive in the Southeast and Midwest, cultivating and maintaining important customer relationships for the Plaintiffs' businesses, including [Compliance Staffing's] business of recruiting, training, certifying, and placing contract labor in underground coal mines throughout the Southeast and

---

[1] The amended complaint uses "Jennmar" as a shorthand for all "entities affiliated with and including the Plaintiffs." Doc. 39 at 2.  Only Jennmar of Kentucky and Compliance Staffing are plaintiffs.  The collective use of "Jennmar" results in a lack of clarity on certain allegations, but the defendants have not asked the court to dismiss any claims on this basis.
[2] The amended complaint does not identify the entity that first employed Ray.

Midwest." Doc. 39 at 3–4; *see also* Doc. 39 at 10.   Jennmar of Kentucky compensated Ray well for his employment, including a generous salary, bonuses, fringe benefits, and access to an expense account that allowed him to develop business opportunities and relationships. Doc. 39 at 4.

Wilson entered into several employment agreements with Jennmar of Kentucky.  The most recent agreement was effective on February 1, 2015[3] and had a two-year term set to "expire on January 31, 2017." Doc. 39-1 at 2.  The agreement obligated Ray to protect Jennmar of Kentucky's confidential and propriety information (Doc. 32-1 at 4–8), and it prohibited Ray from competing with Jennmar of Kentucky "or its parent or affiliated companies" for one year after the termination of his employment. Doc. 39-1 at 8.  It further prohibited Ray from soliciting customers or otherwise diverting business from Jennmar of Kentucky "or its parent or affiliated companies" for two years following the term of the agreement, regardless of whether his employment ended in the meantime. Doc. 39-1 at 10.  The contract states that it will "be governed by, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania without regard to conflict of law principles." Doc. 39-1 at 13.

Despite his contractual obligations, the amended complaint alleges that Ray

---

[3] Although the contract's effective date is February 1, 2015, it was executed on March 2, 2015. Doc. 39-1 at 14.

used Jennmar of Kentucky's and Compliance Staffing's resources, business relationships, and other confidential and proprietary information to establish and operate a competing company, Defendant Jamas Technology, Inc. ("Jamas"), along with his son Defendant Michael Blaine Wilson ("Blaine"). Doc. 39 at 4 & 15–16. Ray incorporated Jamas on August 8, 2004, with Blaine as the registered agent and Vice President of Sales. Doc. 39 at 15.  Jamas' line of business "directly compete[s] with the lines of business of the Plaintiffs within the same geographic territories." Doc. 39 at 15.  The amended complaint alleges that Ray concealed this activity, and his direct involvement in it, for at least the last ten years. Doc. 39 at 5 & 15–16.  The period of concealment included the time during which he entered into the 2015 employment agreement.

"In late June 2020, Jennmar's[4] Vice President of Sales, Rodney Poland," discovered that Compliance Staffing "had been missing out on opportunities to place temporary workers with its long-time customer, Warrior Coal" at two mines near Tuscaloosa, Alabama. Doc. 39 at 16.  Poland then learned that Jamas was providing the additional labor and that Jamas was owned and operated by Ray and Blaine. Doc. 39 at 17.  When confronted on July 9, 2020 about his involvement with Jamas, Ray insisted that the business belonged to Blaine. Doc. 39 at 17.  Ray resigned from his

---

[4] The complaint does not make clear whether this Jennmar entity is Jennmar of Kentucky or some other company.

employment with Jennmar of Kentucky on the following day. Doc. 39 at 17.

The amended complaint states twelve causes of action against the defendants. Doc. 39.  The plaintiffs bring eight of the twelve claims against Ray alone and the other four against all three defendants.   Specifically, the plaintiffs allege the following causes of action: (1) breach of the common law duty of loyalty against Ray; (2) fraudulent misrepresentation against Ray; (3) fraudulent suppression against Ray; (4) tortious interference with business relations against all three defendants; (5) civil conspiracy to tortiously interfere with business relations against all three defendants; (6) breach of contractual duty of loyalty against Ray; (7) breach of the confidentiality provisions in the contract against Ray; (8) breach of the non-compete provisions in the contract against Ray; (9) breach of the non-solicitation provision in the contract against Ray; (10) breach of the electronic communications media provision in the contract against Ray; (11) unjust enrichment against all defendants; and (12) unfair competition against all defendants. Doc. 39 at 17–30.

## II.  STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

## III.  DISCUSSION

The defendants' partial motion to dismiss presents various arguments attacking all or some portion of every claim in the amended complaint. Doc. 45. Most of the arguments are premature on a motion to dismiss and prior to discovery. The court discusses each argument separately below.

### A.    Breach of Contract Claims

The defendants contend that the only damages recoverable on the breach of contract claims are (1) those that relate to conduct before the employment contract expired on January 31, 2017, and (2) injunctive relief. Doc. 45 at 8–11. Similarly, they contend that any claims based on the non-solicitation provision in the contract should be limited to damages relating to conduct before that provision lapsed on

January 31, 2019. Doc. 45 at 18.  It is undisputed that Pennsylvania law applies to the breach of contract claims. Doc. 45 at 15; Doc. 51 at 8–10.

When parties enter into an employment contract for a fixed period of time but continue acting consistent with the contract after the contractual period expires, Pennsylvania law establishes a general presumption that the contract has been renewed for the same period of time and on the same terms as the original agreement. *Smith v. Shallcross*, 69 A.2d 156, 158–59 (Pa. Super. Ct. 1949) (citations omitted); *see also Janis v. AMP, Inc.*, 856 A. 2d 140, 147 (Pa. Super. Ct. 2004) (upholding jury instruction that recognized renewal presumption if employee continued same services post-contract expiration and employer did not object); *Burge v. W. Pa. Higher Educ. Counsel, Inc.*, 570 A.2d 536, 538 (Pa. Super. Ct. 1990); *Kapustik v. Sch. Dist. of the City of Arnold*, 111 A.2d 169, 171–72 (Pa. Super. Ct. 1955).  This presumption of implied renewal can be rebutted by evidence that the parties did not intend to renew the contract. *Smith*, 69 F.2d at 158.

At this stage in the litigation, the court will not limit the breach of contract claims based on the expiration of the employment contract's term.  Although the court acknowledges the contractual provision requiring written extensions, the current record does not foreclose the possibility that the parties actions and Ray's continued employment resulted in an implicit renewal of the contract.  Therefore, at this time the court will deny the motion for partial dismissal of the contract claims

based on the contract's explicit expiration date.[5]

## B.    Standing of Compliance Staffing

The defendants contend that Compliance Staffing lacks standing to bring breach of contract claims against Ray because Compliance Staffing was not a party to Ray's employment agreement. Doc. 45 at 19–22.  Relying on general principles of Alabama public policy, they also claim that Compliance Staffing cannot enforce a restrictive covenant against Ray because he was not a Compliance Staffing employee. Doc. 45 at 20–22.

The plaintiffs insist that the court must apply Pennsylvania law to this question because the contract calls for the application of Pennsylvania law "without regard to conflict of law principles." Doc. 39-1 at 13.  They argue that the amended complaint alleges that Compliance Staffing is an affiliate of Jennmar of Kentucky, the employment agreement expressly includes affiliates, and as an affiliate Compliance Staffing has third party standing under Pennsylvania law. Doc. 51 at 11–12.

Where an enforceable choice of law provision exists, courts typically do not analyze the forum state's conflict-of-law rules. *See, e.g.*, *Stovall v. Universal Const. Co.*, 893 So. 2d 1090, 1102 (Ala. 2004) ("In a contractual dispute, Alabama law would have us first look to the contract to determine whether the parties have

---

[5] The defendants' arguments regarding the alleged ambiguities and inconsistencies in the contract (Doc. 45 at 12–16) are more appropriate at the summary judgment stage.

specified a particular sovereign's law to govern."); *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 507 (Ala. 1991) (holding that "parties normally are allowed to choose another state's laws to govern an agreement"); *DJR Assoc., LLC v. Hammonds*, 241 F. Supp. 3d 1208, 1220 (N.D. Ala. 2017) ("Alabama law has long recognized the right of parties to an agreement to choose a particular state's laws to govern an agreement . . . ."). Because Alabama courts generally honor contractual choice of law provisions, this court will apply Pennsylvania law to its interpretation of the contract.[6]

Under Pennsylvania law, "[t]here is . . . a two part test for determining whether one is an intended third party beneficiary: (1) the recognition of the beneficiary's right must be 'appropriate to effectuate the intention of the parties,' and (2) the performance must "satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Guy v. Liederbach*, 459 A.2d 744, 751 (Pa. 1983). The first part of the test establishes a standing requirement that "leaves discretion with the court to determine whether recognition of third party beneficiary status would be appropriate." *Scarpitti v. Weborg*, 609 A.2d 147, 150

---

[6] The defendants' analysis of the choice of law issue relies on a case dealing in tort law, not contract law. *San Francisco Residence Club, Inc. v. Baswell-Guthrie*, 897 F. Supp. 2d 1122, 1171–72 (N.D. Ala. 2012). The defendants did not provide the court with any authority for the proposition that Alabama's public policy exception overrides the parties' intent when an employment contract explicitly provides that another state's claw will govern any dispute regardless of conflicts issues.

(Pa. 1992).   "The second part defines the two types of claimants who may be intended as third party beneficiaries.  If a party satisfies both parts of the test, a claim may be asserted under the contract." *Id*.

The amended complaint alleges that Compliance Staffing is a "Jennmar-affiliated company." Doc. 39 at 2.  The employment agreement prohibits Ray from competing with "any business carried on by [Jennmar of Kentucky] or its parent or affiliated companies" and soliciting customers "of [Jennmar of Kentucky] or its parent or affiliated companies." Doc. 39-1 at 8 & 10.  Moreover, the definition of confidential information includes information from "[Jennmar of Kentucky], its subsidiaries or affiliates." Doc. 39-1 at 6.  Based on these facts, the plaintiffs assert that Compliance Staffing has third-party beneficiary status and standing to assert breach of contract claims against Ray under Pennsylvania law.[7] Doc. 51 at 11–12.

The issue is not as straightforward as the plaintiffs contend.  One of the core problems relates to the amended complaint's use of the collective shorthand "Jennmar."  Ray entered into an employment agreement with Jennmar of Kentucky not the collective, all-encompassing Jennmar.  And the amended complaint alleges that Compliance Staffing is an affiliate of "Jennmar," not necessarily of Jennmar of

---

[7] In their reply, the defendants admit that Compliance Staffing may have standing to sue under the employment agreement if the court finds that Pennsylvania law applies. Doc. 54 at 8.

Kentucky.  Notwithstanding these concerns, the court will deny the motion to dismiss the breach of contract claims brought by Compliance Staffing against Ray at this time.  The defendants may raise this issue again if discovery clarifies the nature of the parties' relationships.

## C.    Fraud Claims

The defendants assert that the claims for fraudulent misrepresentation and fraudulent suppression are barred by the statute of limitations. Doc. 45 at 23–25. They maintain that Alabama's two-year statute of limitations for fraud claims ran in 2017 because these claims are based on Ray's decision to enter into the employment agreement with Jennmar of Kentucky in 2015. Doc. 45 at 23.  The parties agree, at least at this stage, that Alabama law determines whether these claims are time-barred. Doc. 51 at 14 n.3.

A statute of limitations defense often is poorly suited for resolution on a motion to dismiss under Rule 12(b)(6) because "a statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint." *La Grasta v. First Union Secs., Inc*., 358 F.3d 840, 845 (11th Cir. 2004) (citation and internal marks omitted).  In other words, a federal complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense.  Dismissal may be appropriate, however, if it is "apparent from the face of the complaint that the claim is time-barred." *Id*.  Despite the

defendants' arguments to the contrary, the court cannot find that the amended complaint is clear on its face.  Instead, the amended complaint alleges enough facts to plausibly toll the statute of limitations under the discovery rule.

Under well-settled Alabama law, "[i]n a fraud action, the running of the limitations period is tolled pursuant to the 'discovery rule' found in § 6-2-3, Ala. Code 1975." *Target Media Partners Op. Co. v. Specialty Marketing Corp*., 177 So. 3d 843, 862 (Ala. 2013).  Specifically, Alabama Code § 6-2-3 tolls the statute of limitations in fraud actions "until the discovery by the aggrieved party of the fact constituting the fraud." *See DGB, LLC v. Hinds*, 55 So. 3d 218, 224 (Ala. 2010) (holding that "this statute is usually applicable to cases wherein fraud is the basis of the cause of action") (citation omitted).  "The question of when a party discovered or should have discovered the fraud is generally one for the jury." *Potter v. First Real Estate Co*., 844 So.2d 540, 546 (Ala. 2002) (citation omitted).

To show that a plaintiff's claims fall within § 6-2-3, a complaint must allege the time and circumstances of the discovery of the cause of action. *See, e.g.*, *Angell v. Shannon*, 455 So. 2d 823, 823–24 (Ala. 1984); *Papastefan v. B & L Constr. Co*., 356 So. 2d 158, 160 (Ala. 1978). The complaint also must allege the facts or circumstances concealing the cause of action or injury and preventing discovery. *See, e.g.*, *Smith v. Nat'l Sec. Ins. Co*., 860 So. 2d 343, 345 & 347 (Ala. 2003); *Lowe v. East End Mem'l Hosp. & Health Ctrs*., 477 So. 2d 339, 341–42 (Ala. 1985).

The amended complaint alleges sufficient facts to invoke the discovery rule. Specifically, the amended complaint alleges that Ray had concealed the fraud since he formed Jamas with his son in 2004 and that the plaintiffs did not discover the fraud until "recently." Doc. 39 at 5 & 15–16.  While the court acknowledges the defendants' argument that some of the allegedly concealed information could have been discovered earlier on the plaintiffs' own computer systems, the court cannot resolve this issue without the benefit of discovery.  For these reasons, the motion to dismiss the fraud claims is premature and due to be denied.

**D.     Tort Claims**

In the same vein, the defendants contend that the tort claims for breach of the common law duty of loyalty, tortious interference with business relationships, civil conspiracy, and unjust enrichment are limited by the two-year statute of limitations. Doc. 45 at 29–30.  Specifically, they argue that the plaintiffs cannot recover damages for any alleged tortious conduct occurring more than two years before the filing of the complaint. Doc. 45 at 29–30.  The plaintiffs again respond that the discovery rule and equitable tolling salvage these claims. Doc. 51 at 14–18.

Alabama's discovery rule applies not only to fraud actions, but also to the fraudulent concealment of the existence of other causes of action. Ala. Code § 6-2-3; *Utilities Bd. of City of Opp v. Shuler Bros*., 138 So. 3d 287, 293 (Ala. 2013) (citing *DGB, LLC*, 55 So. 3d at 225).  The tort claims alleged in the amended complaint fall

squarely within the fraudulent concealment line of cases.  As the Alabama Supreme

Court explained in addressing a predecessor of § 6-2-3,

> [w]hile this statute is usually applicable to cases wherein fraud is the
> basis of the cause of action, it is the settled construction that its purpose
> is to make available at law the rule theretofore prevailing in equity; and
> applies to a fraudulent concealment of the existence of a cause of action
> from the party in whose favor the cause of action exists.  A party cannot
> profit by his own wrong in concealing a cause of action against himself
> until barred by limitation.  The statute of limitations cannot be
> converted into an instrument of fraud.

*DGB, LLC*, 55 So. 3d at 224 (citations omitted); *see also Amason v. First St. Bank*

*of Lineville*, 369 So. 2d 547, 550 (Ala. 1979) ("[Section 6-2-3] would in effect stay

the running of the general statute of limitations for torts (one year) until such time

as [the plaintiff] discovered or ought to have discovered, the fraud."); *Van Antwerp*

*v. Van Antwerp*, 5 So. 2d 73, 80 (Ala. 1941) (holding as to a predecessor of § 6-2-3

that "this statute makes provision for a limitation of one year from the date of . . .

discovery, provided its discovery was concealed by some activity of defendant,

amounting to a fraud. . . . [a]nd in this connection it is not limited to actions based

on fraud"); *Rutledge v. Freeman*, 914 So. 2d 364, 369 (Ala. Civ. App. 2004)

("Although the wording of § 6-2-3 indicates that it applies only to fraud actions, that

section and its predecessor have long been held to apply to any cause of action that

has been fraudulently concealed from a plaintiff."); *City of Gadsden v. Harbin*, 398

So. 2d 707, 709 (Ala. Civ. App. 1981) ("It is well settled that a fraudulent

concealment of a tort or injury by the defendant will toll the running of the statute

of limitations until the tort or injury is discovered or could have been discovered by due diligence."). Because the amended complaint alleges the fraudulent concealment of the plaintiffs' tort claims, it appropriately invokes the discovery rule. For this reason, the motion to dismiss these claims is due to be denied at this time.

## E.   Civil Conspiracy

The parties appear to agree that Pennsylvania law governs the claim for civil conspiracy, at least for now. Doc. 45 at 25–27; Doc. 51 at 18–24. To establish liability for civil conspiracy in Pennsylvania, a plaintiff must show that (1) two or more defendants conspired with a common purpose to do an unlawful act, or a lawful act by unlawful means or for an unlawful purpose; (2) the defendants committed an overt act in furtherance of the conspiracy; and (3) the plaintiff suffered legal damages. *Weaver v. Franklin County*, 918 A.2d 194, 202 (Pa. Commw. Ct. 2007). A claim for civil conspiracy cannot stand without some underlying tortious act that is independently actionable under Pennsylvania law. *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000).

The defendants first argue that the conspiracy claim against Jamas fails under the intracorporate conspiracy doctrine because a conspiracy under Pennsylvania law is not actionable between a principal and its agent. Doc. 45 at 25. "It is well-settled that a corporation cannot conspire with its subsidiaries, agents, or its employees." *Duffy v. Lawyers Title Ins. Co*., 2012 WL 602192, at * 4 (E.D. Pa. 2012) (citations

omitted).  A conspiracy between a corporation and an officer may exist, however, "if the officer is acting in a personal, as opposed to official, capacity." *Heffernan v. Hunter*, 189 F.3d 405, 412 (3d Cir. 1999).  But the fact that an agent may have "acted in bad faith or with [an] illegitimate purpose . . . in mind, does not, in itself, bring [the agent's] actions outside the scope" of the employment relationship. *Gen. Ref. Co. v. Fireman's Fund Ins. Co*., 337 F.3d 297, 314 (3d Cir. 2003).

The plaintiffs invoke this exception to the intracorporate conspiracy doctrine, claiming that Ray and Blaine acted in their personal capacities and not in their official capacities. Doc. 51 at 19–20.  In support, they point to the allegations in the amended complaint that Ray and Blaine conspired "to misappropriate confidential and proprietary information, to compete with Plaintiffs and to tortiously interfere with Plaintiffs' business relations." Doc. 39 at 22.  And they contend that it is too early in the litigation to dismiss the conspiracy claim based on the intracorporate conspiracy doctrine.  The court agrees.  Without some discovery the court cannot delineate the relationships among the parties or discern whether Ray and Blaine were acting in a purely personal capacity.  The court will not dismiss the conspiracy claim against Jamas on this basis without an adequate record.

The defendants also contend that the conspiracy claims are due to be dismissed for failure to state a claim because the amended complaint does not allege malice or that the sole purpose of the conspiracy was to injure the plaintiffs. Doc. 45

at 26–27.  Instead, they contend that the allegations show only that the defendants were attempting to turn a profit for themselves. Doc. 45 at 27.

In Pennsylvania, "[p]roof of malice, i.e., an intent to injure, is essential in proof of a conspiracy." *Commerce Bank/Penn. v. First Union Nat. Bank*, 911 A.2d 133, 143 (quoting *Thompson Coal Co. v. Pike Coal Co*., 412 A.2d 466, 472 (Pa. 1979).  "Malice requires . . . that the sole purpose of the conspiracy was to injure the plaintiff," and that this intent was without justification. *Doltz v. Harris & Assocs.*, 280 F. Supp. 2d 377, 389 (E.D. Pa. 2003).  Facts showing that a person acted to advance his own business interests, and not solely to injure another, negate any alleged malice. *Id.*; *see also WM High Yield Fund v. O'Hanlon*, 2005 WL 1017811, at *14 (E.D. Pa. April 29, 2005) (noting that a civil conspiracy claim failed when the plaintiffs acknowledged that the defendants' intent was to raise new capital to fund the growth of a nonparty corporation, thereby negating malice solely to injure plaintiffs).  However, "knowingly misusing another's property for one's own ends qualifies as malice." *Strayer v. Bare*, 2008 WL 1924092, at *12 (M.D. Pa. April 28, 2008).

While the allegations of malicious intent are not overwhelming, the court will permit the plaintiffs' civil conspiracy claim to survive at this stage of the proceedings.  The amended complaint alleges that "acting through and with Jamas, Ray Wilson and Blaine Wilson acted with a common purpose to conspire amongst

17

themselves to misappropriate the Plaintiffs' confidential and proprietary information, to compete with Plaintiffs and to tortuously interfere with Plaintiffs' business relations." Doc. 39 at 22.  The amended complaint further alleges that their "intentional and concerted acts . . . divert[ed] corporate opportunities away from the Plaintiffs for their own pecuniary gain." Doc. 39 at 6.  These allegations reasonably imply a knowing misuse of another's property for their own ends, and therefore adequately allege malice.  Of course, after some discovery the claim may fail for the same reasons advanced by the defendants,[8] but at this stage dismissal is premature.

## F.   Unfair Competition

In the motion to dismiss, the defendants do not make any meaningful attempt to resolve the conflicts-of-law issues complicating the unfair competition claim. Instead, they offer alternative analyses under the laws of Alabama, Pennsylvania, and Kentucky. Doc. 45 at 27–29.  The defendants hedge their bets even in their reply brief by arguing that the amended complaint fails to state a claim if Pennsylvania law applies, but in a footnote stating that "Kentucky law may also apply if the alleged injuries and damages are determined to belong to Jennmar of Kentucky, Inc., a Kentucky corporation." Doc. 54 at 14 n.12.  There is no meaningful analysis of the

---

[8] The court agrees with the District Court's observation in *North American Communications, Incorporated v. Herman*, 2018 WL 2186422, at * 9 (W.D. Pa. My 11, 2018), that an overly broad interpretation of the malice requirement would foreclose almost every civil conspiracy claim since few defendants engage in tortious behavior that does not inure to their benefit in some way.

claim under Kentucky law in either the motion to dismiss or reply brief, and the court declines to perform the defendants' work for them.  The defendants have not carried their burden of showing why the claim for unfair competition must be dismissed at this time.

## G.   Claims Against Blaine

The amended complaint alleges four counts against Blaine: tortious interference with business relations, civil conspiracy to tortiously interfere, unjust enrichment, and unfair competition. Doc. 39 at 21–22 & 28–30.  The defendants contend that these claims are due to be dismissed because there are "no specific, non-conclusory allegations about any alleged wrongful acts committed by Blaine Wilson individually, and further, no allegations to pierce the corporate veil of Jamas to reach him." Doc. 45 at 31.  The court agrees.

Beyond the preliminary paragraphs describing the parties, jurisdiction, and venue, the only facts in the amended compliant relating to Blaine are:

- Ray enlisted Blaine to help him establish and operate one or more competing businesses. Doc. 39 at 4.
- Blaine owns and operates Jamas (Doc. 39 at 6 & 17) and is "a co-conspirator of his father's in their intentional and concerted acts to divert corporate opportunities away from the Plaintiffs for their own pecuniary gain." Doc. 39 at 6.
- Blaine is the registered agent for Jamas and "holds himself out on social media as Jamas' Vice President of Sales, a position he purports to have held since October 2015." Doc. 39 at 15.

All of the other allegations about Blaine are conclusory and amount to bare

recitations of the elements of the particular tort alleged.  At its core, the amended complaint asks the court to infer Blaine's guilt simply because of his association with his father.  These allegations are not "enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and the motion to dismiss these claims is due to be granted.[9]

Although the allegations are insufficient at present, a district court's discretion to dismiss a complaint without granting leave to amend "is severely restrict[ed]" by Federal Rule of Civil Procedure 15(a), "which directs that leave to amend 'shall be freely given when justice so requires.'" *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (internal quotation marks and citation omitted).  Where a more carefully drafted pleading might state a viable claim, a district court must give the plaintiff at least one chance to amend the complaint before dismissing the action with prejudice. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).  However, a district court need not allow an amendment where (1) "there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies" through prior amendments; (2) amending the complaint would prejudice the opposing party; or (3) "amendment would be futile." *Id*.  The court finds that none of these factors are present here, and therefore it will allow the plaintiffs an opportunity to amend the

---

[9] This conclusion renders Defendant Blaine Michael Wilson's Motion to Supplement Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 67) moot.

complaint to attempt to state a claim against Blaine.

## IV.  CONCLUSION

For these reasons, it is ORDERED that the Motion to Dismiss In Part (Doc. 45) is GRANTED IN PART and DENIED IN PART.  The claims stated against Defendant Michael Blaine Wilson are DISMISSED.   All other claims remain. Additionally, Defendant Blaine Michael Wilson's Motion to Supplement Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 67) is DENIED as MOOT.

The plaintiffs will be allowed the opportunity to file a second amended complaint to attempt to correct the deficiencies in the claims alleged against Michael Blaine Wilson.  Therefore, it is further ORDERED that the plaintiffs shall file a complete second amended complaint on or before **August 26, 2021**.  This second amended complaint must be an entire stand-alone complaint and must set forth each and every allegation and claim without reincorporating allegations and claims from any other pleading.

DONE and ORDERED on August 5, 2021.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE